522 So.2d 648 (1988)
W.H. WARD LUMBER CO., INC.
v.
MERIT HOMES, INC., Lynn Yao and Steve Amitsis.
No. 87-CA-608.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 1988.
*649 David S. Cressy, New Orleans, for Lynn Yao, defendant-appellant.
Daniel L. Morrow, Gretna, for W.H. Ward Lumber Co., Inc., plaintiff-appellee.
Before CHEHARDY, C.J., and DUFRESNE, and WICKER, JJ.
CHEHARDY, Chief Judge.
Plaintiff, W.H. Ward Lumber Co., Inc., sued Merit Homes, Inc., for money due on an open account. Also named as defendants were Lynn Yao and Steve Amitsis under an agreement of continuing guaranty. The petition alleged that the sum of $22,759.11 plus interest and reasonable attorney's fees was due. After a trial on the merits, judgment was rendered in favor of plaintiff, W.H. Ward Lumber Co., Inc., against defendants, Merit Homes, Inc., and Lynn Yao, in solido, for $22,759.11 with interest and attorney's fees. From this judgment, Lynn Yao appeals.
Merit Homes, Inc., a Louisiana corporation, opened an account with plaintiff to buy building materials. This account was secured by the following continuing guaranty.
*650
CONTINUING GUARANTY
IN CONSIDERATION of W. H. WARD LUMBER CO.,INC., or any of its subsidiary
companies (herematter called "WARD") extending terms of credit to
 (hereinafter called
"CUSTOMER"), the undersigned (hereinafter, even though more than one, the singular
including the plural,"UNDERSIGNED") gives this Continuing Guaranty to Ward, and its
subsidiary companies from whom purchases may be made, for the payment in full, together
with all interest attorney's fees and charges of whatever nature and kind, of any and all
indebtedness or obligation of the Customer to Ward, whether due or to become due whether
now existing or hereinafter arising. The Customer, the Undersigned, his heirs and assigns are
bound hereby, in solido, for this indebtedness or obligation precisely as if it had been
contracted personally by the Undersigned. The Undersigned hereby waives notice of demand
or non-payment and all notice and all please of discussion and division. The Undersigned
agrees to pay to Ward upon demand, at any time, the full amount due by Customer to Ward.
Notice of the acceptance of this Continuing Guaranty and of the indebtedness covered
by or subject to this Continuing Guaranty and any action to establish the liability of any
party of any account, indebtedness or obligation covered by or subject to this Continuing
Guaranty are hereby severally waived. The liability of Undersigned shall not be affected
or diminished by any change, extension, release of security or indulgence of any kind in
respect to any debt, obligation or transaction covered by or subject to this Continuing
Guaranty, and the Undersigned declares that this agreement is intended as an unconditional
Continuing Guaranty of any and all indebtedness or obligations, which from time to time, or
at any time, may exist or become due and owing to Ward, its successors and assigns, by the
Customer.
It is expressly agreed that this Continuing Guaranty is absolute and complete, and it
shall continue in full force and effect until written notice of its discontinuance shall be
served upon one of the executive officers of Ward, but such discontinuance shall not affect
the liability of any party to this agreement, nor shall it affect or diminish the liability of the
party or parties giving the notice to Ward as to any indebtedness or obligation of the
Customer then existing nor the liability of any party liable in the premises.

Merit Homes, Inc., failed to pay for building materials purchased in November and December of 1985. Those debts are the subject of this suit.
Lynn Yao urges that he is not bound individually for these debts. He alleges the continuing guaranty agreement was altered without his consent and he was, thereby, released.
A salesman of Ward Lumber testified that he was in attendance when the continuing guaranty was signed. Subsequently he became aware that the titles of Lynn Yao and Steve Amitsis followed their signatures. He returned to defendant's place of business and advised Steve Amitsis that the titles were unacceptable. At that time Amitsis scratched out the words "Vice Pres." following his name and initialed same. He then took the document out of the view of plaintiff's salesman and subsequently returned with the word "Pres." scratched out and the initials "LY" next to the scratch-out. No evidence was presented to dispute this testimony.
A contract of guaranty is equivalent to a contract of suretyship. The terms guaranty and suretyship may be used interchangeably. Guaranty Bank and Trust Co. v. Jones, 489 So.2d 368 (La.App. 5 Cir.1986). LSA-C.C. arts. 3035 et seq. govern the contract of suretyship. Where these articles are silent the codal articles governing contracts in general apply. LSA-C.C. art. 1915; Ferrell v. South Central Bell Tel. Co., 403 So.2d 698 (La.1981).
The interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. A contract "must be interpreted with a meaning that renders it effective and not with one that *651 renders it effective." LSA-C.C. art. 2049.
The language of the continuing guaranty indicates that the terms "the undersigned" and "the company" refer to two different parties. The document clearly shows that the parties intended to personally bind Yao and Amitsis for the debts of Ward Lumber.
Additionally, to construe the signatures followed by the titles as binding Yao and Amitsis only in their capacity as officers of the corporation would render the agreement worthless, as Merit Homes is otherwise bound for its debts on this open account. Construing it to bind Yao and Amitsis personally renders it effective and meaningful.
Therefore, we find the continuing guaranty as originally written, with the corporate titles, clearly established a personal guaranty of Yao securing the open account of Merit Homes.
The guarantor has the right to stand on the terms of the contract. However, not every unauthorized alteration will release the guarantor from liability.
If, in fact, the removal of the corporate titles was unauthorized such did not materially alter the effect of the document or prejudice the rights of Yao, as his liabilities are identical both before and after the alteration.
We find no manifest error in the trial court's factual finding that Yao was not released by the alteration of the continuing guaranty and is personally liable under the terms of the continuing guaranty agreement.
Lynn Yao further alleges he verbally revoked the continuing guaranty prior to November 1985 by telling A.J. Ward, president and owner of Ward Lumber, that he sold his stock in Merit Homes.
Mr. Ward agrees that in September 1985 Lynn Yao advised him that he sold his stock in Merit Homes to Steve Amitsis. Mr. Ward testified that he advised Yao at that time that oral notice would not release him from liability under the terms of the continuing guaranty agreement.
LSA-C.C. art. 3058 states in part: "The obligations of a surety are extinguished by the different manners in which conventional obligations are extinguished ..." (Prior to January 1, 1988 the substance of this article was contained in LSA-C.C. art. 3059. This section of the Civil Code was revised by Acts 1987, No. 409.)
Pursuant to LSA-C.C. art. 1983 contracts have the effect of law for the parties and can be dissolved only through the consent of the parties or on grounds provided by law.
A.J. Ward and Lynn Yao did not verbally agree to dissolve the continuing guaranty agreement. The language of the continuing guaranty agreement provides that it will remain in full force and effect until written notice of its discontinuance is served on one of the executive officers of Ward. Therefore, oral notice of the stock sale did not constitute a revocation of the guaranty agreement, as it did not comply with the terms of the agreement.
Finally, appellant contends attorney's fees were improperly awarded as Ward did not comply with the statutory requirements of LSA-R.S. 9:2781(A). That statute grants reasonable attorney's fees for the prosecution and collection of moneys owed on an open account.
LSA-C.C. art. 2000 provides in part: "If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well."
Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987), held that the above statutory language does not preclude the court's inquiry into reasonableness of attorney's fees.
Attorney's fees are provided for in the continuing guaranty agreement. Therefore, Ward's recovery of attorney's fees is proper under the contract and he need not avail himself to the rights granted by LSA-R.S. 9:2781(A). The issue of liability pursuant to that statute is, therefore, moot.
*652 For the foregoing reasons, we affirm the trial court. Costs of the appeal are assessed against appellant.
AFFIRMED.